**MARYLAND CASUALTY CO. v. GRAY et al.**

No. 1304.

District Court, N. D. Texas, at Abilene.

Oct. 11, 1938.

Smith & Eplen, of Abilene, Tex., for Maryland Casualty Co.

Sayles & Sayles and Scarborough & Ely, all of Abilene, Tex., for Wash Gray et al.

DAVIDSON, District Judge.

From the evidence adduced, I find:

First, that Wash Gray and F. F. Moore did, sometime about September, 1937, enter into a memorandum of agreement touching the labor to be performed in the erection of a house for said F. F. Moore. Some $300 of the labor was to be paid in the liquidation of debts and groceries to be furnished; some $335 was to be paid in money.

Second, I find that Moore was not able to finance the building, and that he accordingly, on the 7th day of September, 1937, executed a building contract, coupled with a mechanic's lien, with H. L. Rice, doing business under the name of Pine Street Lumber Yard. By the terms of this arrangement, of which Mr. Gray was cognizant, Rice was to furnish all labor and material and erect the house for Moore for a stated consideration.

Third, Gray labored in the construction of the house and received the money, on the payroll of Rice, under the mechanic's lien. Moore, the owner of the house, acted as building inspector, as it were, and in addition to the money furnished from the Rice payroll, he advanced Gray some additional groceries, in addition to the indebtedness that Gray already owed. These groceries entered into Gray's compensation.

Fourth, I find that in the progress of the work that Gray's hand became infected, as he says from the result of a splinter that entered a finger while laboring upon the house, and that this hand became seriously infected and various doctors treated the same and took out the middle finger, and the other fingers have become greatly impaired and stiffened, so as to greatly impair the usefulness of the hand; that blood poisoning set up, and Gray was confined to the hospital for something like 75 days, and was very sick.

Fifth, I find that Moore, seeing the work had stopped upon the house, took up the specifications and fired Gray, and put another man on the job.

Sixth, I find that Gray, up to this date, is totally incapacitated and disabled. I further find that he will be permanently and partially disabled for the balance of his life, to the extent of 33⅓ percent of his earnings.

Seventh, I find that Rice was a subscriber under the terms of the Workmen's

Compensation Law, Vernon's Ann.Civ.St. Tex. art. 8306 et seq., and that Gray was one of the beneficiaries of his payroll in the construction of the building.

Eighth, I find that Gray was not working regularly; that in the course of a year's time he would put in approximately 240 days; that his wages varied; that he would be entitled to receive, while on total disability, $18 per week.

From the foregoing, I conclude that the contract made between Moore and Gray with reference to labor was of a preliminary character and was superseded by the mechanic's lien entered into between Moore and Rice; that Gray accepted such arrangement and became, as it were, the head workman in the construction of the house under Rice's building contract and mechanic's lien, and that his building contract was restricted, in the light of the parties' subsequent conduct, only to the extent of putting him on the payroll and treating him, so to speak, as the head workman while he remained on the job; that although Moore advanced a part of the compensation to Gray in the settlement of debts previously contracted and in groceries then furnished, there was regularly paid from the payroll of Rice, the contractor, certain sums of money upon weekly estimates as the work progressed, and that Gray became a laborer under the Rice contract.

I find that Gray is entitled to full compensation in the amount of $18 per week for fifty-one weeks; that he is entitled to partial compensation for three hundred fifty weeks to the extent of 33⅓ percent.